1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID BRADSHAW,                    No.  2:14-cv-420-EFB

12              Plaintiff,

13        v.                            ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act.  The parties' cross-motions for summary judgment are pending.

21   For the reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is

22   granted.

23   I.    BACKGROUND

24        Plaintiff filed an application for SSI on June 17, 2010, alleging that she had been disabled

25   since October 1, 2001.  Administrative Record ("AR") 166-174.  Plaintiff's application was

26   denied initially and upon reconsideration.[1]  *Id.* at 105-109, 114-118.  On July 26, 2012, a hearing

27   _____

28        [1]  Plaintiff also filed an application for a period of disability and disability insurance
     benefits ("DIB") under Title II of the Social Security Act.  AR 162-165.  That application was

                                      1

was held before administrative law judge ("ALJ") Sharon Madsen. *Id.* at 35-61. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.*

On August 3, 2012, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act prior to May 23, 2013, but that he became disabled on that date.[2] *Id.* at 20-30. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 416.971 *et seq.*).

---

denied because plaintiff did not have sufficient work credits to qualify for DIB. *Id.* at 102-104. There is no indication in the record that plaintiff ever sought review of the initial decision denying his application for DIB.

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

* * *

2. Since the alleged onset date of disability, October 1, 2001, the claimant has had the following severe impairments: lumbar degenerative joint disease; bilateral hip mild degenerative joint disease; and depression. Beginning on the established onset date of disability, May 23, 2012, the claimant has had the additional severe impairment of peripheral vascular disease (20 CFR 416.920(c)).

* * *

3. Since the alleged onset date of disability, October 1, 2001, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

* * *

4. After careful consideration of the entire record, I find that prior to May 23, 2012, the date the claimant became disabled, the claimant had the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently; and sit, stand, and/or walk 6 hours in an 8-hour workday.  He could frequently climb, balance, stoop, kneel, crouch, and crawl.  He could perform simple routine tasks. (20 CFR 416.967(c)).

* * *

5. After careful consideration of the entire record, I find that beginning on May 23, 2012, the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk 6 hours in an 8-hour workday.  He could frequently climb, balance, stoop, kneel, crouch, and crawl.  He could perform simple routine tasks, but would need an additional two to four work breaks of 30 minutes each (20 CFR 416.967(b)).

* * *

6. The claimant has no past relevant work (20 CFR 416.965).

* * *

7. Prior to the established disability onset date, the claimant was an individual of advance age.  The claimant's age category has not changed since the established disability onset date (20 CFR 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).

10. Prior to May 23, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969 and 416.969(a)).

* * *

11. Beginning on May 23, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

* * *

12. The claimant was not disabled prior to May 23, 2012, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 416.920(g)).

*Id.* at 22-29.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 14-15, and on December 11, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.     ANALYSIS

Plaintiff argues that the ALJ erred in discrediting his testimony without providing legally sufficient reasons.  ECF No. 19 at 4-14.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  *See id.* at 345-347.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  *Morgan*, 169 F.3d at 599.

Plaintiff testified that he cannot walk more than 100 feet without excruciating pain in his back and lower extremities, but indicated that this limitation began only three months before the July 26, 2012 hearing, which was around the time he was diagnosed with peripheral vascular

1   disease. AR 43-44.  Although plaintiff testified that he had a long history of back pain, he stated

2   that before he was diagnosed with peripheral vascular disease he "didn't have that big of a

3   problem," and that he could walk about a mile and stand for approximately 50 minutes at a time.

4   *Id*. at 47, 49, 50.  He further stated that sometimes he can take care of his personal needs,

5   including showering and dressing; that he does some household chores such as cooking; and that

6   he works part time repairing washers and dryers, which requires him to lift his 20 to 25 pound

7   toolbox. *Id.* at 40-42.  Plaintiff also testified to experiencing headaches.  *Id*. at 51-52.

8          The ALJ gave reduced weight to plaintiff's testimony that his limitations prevented him

9   from working prior to May 23, 2012.  AR 27.  First, the ALJ observed that plaintiff engaged in

10  activities that contradicted his contention that he was unable to work.  Although plaintiff testified

11  that he "had a back problem for decades" (*id*. at 49), as noted by the ALJ, plaintiff reported

12  injuring his back in 2009 while carrying a 50 pound tool chest (*id*. at 240), and he conceded that

13  he maintained the ability to carry a 20 to 25 pound toolbox.  Plaintiff also testified that he was

14  able to work part time repairing washing machines (*id*. at 42), and that just months prior to the

15  hearing he was able to walk a mile without a problem.  *Id*. at 47.  The ALJ was permitted to rely

16  on the inconsistencies in plaintiff's daily activities with allegations of disabling limitations in

17  giving reduced weight to his testimony that he was completely disabled prior to May 23, 2012.

18  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (finding that the ALJ properly "pointed

19  out ways in which [the plaintiff's] claim to have totally disabling pain was undermined by her

20  own testimony about her daily activities.").

21         The ALJ also discounted plaintiff's testimony that his impairments rendered him disabled

22  prior to May 23, 2012 based on plaintiff's sporadic complaints of back pain and infrequent

23  medical treatment.  AR 27.  In assessing credibility, an ALJ may consider a plaintiff's

24  "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

25  of treatment."  *Smolen*, 80 F.3d at 1284.

26         The record indicates that in January 2009, plaintiff injured his back carrying a 50+ pound

27  toolbox.  AR 240.  Plaintiff received two months of chiropractic care, which improved his back

28  pain.  *Id*. at 233, 244.  In April 2009, plaintiff went to the emergency room with complaints of

1  right leg numbness and lower back pain, which was characterized as mild, and was diagnosed

2  with sciatica.  *Id*. at 244, 246.  He was given 20 pills of Vicodin and told to follow-up with his

3  primary care physician.  *Id*.  Plaintiff returned to the emergency room two weeks later with

4  similar complaints.  *Id*. at 253.  He was given another 20 pills of Vicodin and once again notified

5  to follow-up with his primary care physician.  *Id*. at 255.

6          There is no indication, however, that plaintiff ever followed up with his primary care

7  physician.  Instead, plaintiff did not see his physician until nearly a year later in March 2010,

8  when he needed refills for his hypertension, hyperthyroidism, high cholesterol medication, and

9  pain medication.  *Id*. at  273.  Dr. Yong, plaintiff's treating physician, instructed plaintiff to

10  follow up with an appointment in 3 months.  *Id*. at 274.  However, plaintiff did not return until

11  February 2011.  *Id*. at 268-271.  Significantly, Dr. Yong's diagnosis during this second visit did

12  not include hip, back, or leg pain.  *Id*. at 270.  Plaintiff was again instructed to follow up in 3

13  months (*id*. at 271), but he did not return until October 2011, when he needed medication refills.

14  *Id*. at 427.  Treatment notes from this third visit also did not indicate any diagnosis for hip or back

15  pain.  *Id*. at 427-728.  In February 2012, plaintiff presented with complaints of hip and back pain.

16  *Id*. at 422.  Dr. Yong noted that plaintiff had a full range of motion in all joints and again did not

17  provide a hip or back diagnosis.  *Id*. at 422-423.

18          It was not until May 23, 2012, that Dr. Yong diagnosed plaintiff with peripheral vascular

19  disease with left leg claudication.  *Id*. at 420.  At the time, Dr. Yong indicated that plaintiff could

20  only walk a short distance before he experienced leg and thigh pain.  *Id*.  This evidence supports

21  the ALJ's finding that plaintiff only sporadically complained of back and hip pain and failed to

22  properly seek treatment for these alleged impairments prior to being diagnosed with peripheral

23  vascular disease.  Accordingly, the ALJ did not err in giving reduced weight to plaintiff's

24  testimony.

25  IV.    <u>CONCLUSION</u>

26          Accordingly, it is hereby ORDERED that:

27          1.  Plaintiff's motion for summary judgment is denied;

28  /////

2.  The Commissioner's cross-motion for summary judgment is granted; and

3.  The Clerk is directed to enter judgment in defendant's favor.

DATED:  September 22, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE